IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN C. MAXWELL, | › | |
| | › | |
| Plaintiff, | › | |
| | › | |
| v. | › | 1:20-cv-1093-JDT-jay |
| | › | |
| BILL LEE, RANDY MCNALLY, | › | |
| CAMERON SEXTON, and | › | |
| HERBERT H. SLATERY III, | › | |
| | › | |
| Defendants. | › | |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

Before the court is the May 27, 2020 motion of the defendants, Bill Lee, Randy McNally, Cameron Sexton, and Herbert H. Slatery III, (collectively, the "Defendants"), to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). (D.E. 12.) The *pro se* plaintiff, Stephen C. Maxwell ("Maxwell"), filed a response in opposition on May 27, 2020. (D.E. 13.) This case has been referred to the undersigned United States Magistrate Judge for all pretrial matters for determination and/or report and recommendation as appropriate pursuant to Administrative Order 2013-05. (Admin Order 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that the Defendants' motion to dismiss be **GRANTED** under Rule 12(b)(1) for lack subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## I.     PROPOSED FINDINGS OF FACT

On April 27, 2020, Maxwell filed a *pro se* complaint against the Defendants, Bill Lee, Governor of the State of Tennessee ("Governor Lee"); Randy McNally, Lieutenant Governor of the State of Tennessee; Cameron Sexton, Speaker of the Tennessee House of Representatives; and Herbert H. Slatery III, Attorney General and Reporter for the State of Tennessee.  (Compl., D.E. 1.)

Maxwell alleges that his constitutional rights were violated after Governor Lee signed Executive Order Nos. 22 and 23[1] in response to the COVID-19 pandemic.  (*Id.* ¶ 3.)  Maxwell claims that the executive orders unlawfully placed all Tennessee residents on "lockdown" without due process because affected citizens were not read their rights or advised that they could consult with an attorney.  (*Id.*)  Maxwell also alleges that he was unlawfully prohibited from leaving his home at night.  (*Id.*)  Maxwell seeks monetary damages in excess of $20 million for: (1) interference with his First Amendment right to worship; (2) unlawful arrest and false imprisonment; and (3) mental anguish, anxiety, and claustrophobia "during the Midnight Hours [for] not being able to get out."  (*Id.* ¶ 4.)

## II.    PROPOSED CONCLUSIONS OF LAW

### A.    Legal Standards

Rule 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Subject matter jurisdiction is a threshold issue which a court must determine before reaching other issues.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266,

---

[1] On March 30, 2020, Governor Lee signed Executive Order No. 22.  *Order Directing Tennesseans to Stay Home Unless Engaging in Essential Activities to Limit Their Exposure to and Spread of COVID-19*, State of Tenn. Exec. Order No. 22 (Mar. 30, 2020), https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee22.pdf. Governor Lee amended Executive Order No. 22 three days later by signing Executive Order No. 23.  *Order Amending Executive Order No. 22, Requiring Tennesseans to Stay Home Unless Engaging in Essential Activity or Essential Services*, State of Tenn. Exec. Order No. 23 (Apr. 2, 2020), https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee23.pdf.

2

269 (6th Cir. 1990). "Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "A party seeking to invoke the jurisdiction of the federal courts . . . bears the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (per curiam). Article III standing is properly challenged under Rule 12(b)(1) because standing is "a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010); *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). When a party challenges a court's subject matter jurisdiction under Rule 12(b)(1) and raises the defense of the Eleventh Amendment, it is considered a factual attack on the court's jurisdiction and thus no presumption of truth applies to the plaintiff's allegations. *See Oshop v. Tenn. Dep't of Children's Serv.*, 2009 WL 1651479, at *2-3 (M.D. Tenn. June 10, 2009); *Chapman v. Troutt*, 2011 WL 2160941, at *2 (M.D. Tenn. June 1, 2011).

To survive a Rule 12(b)(6) dismissal following the Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of

3

truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Further, the courts are not required to act as counsel for a *pro se* litigant; nor are they required to sort through the pleadings to create a claim on behalf of the plaintiff. *Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted). Requiring the court "to ferret out the strongest cause of action on behalf of the *pro se* litigants . . . would transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). "While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Id.*

4

**B.     Standing**

In evaluating a party's standing under Article III, the court "must determine whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (internal quotations and citations omitted). The plaintiff bears the burden of establishing standing "for each claim he seeks to press." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 652 (6th Cir. 2007) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)). "To satisfy Article III's standing requirements, a plaintiff must show: (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Loren*, 505 F.3d at 607 (internal quotations and citations omitted).

Maxwell lacks Article III standing because he has not alleged an actual or imminent, concrete and particularized "injury in fact." While Maxwell claims that he was not able to leave his home at night and that he suffered mental anguish, anxiety, and claustrophobia "during the Midnight Hours [for] not being able to get out," his complaint raises only "a generally available grievance about government" for alleged constitutional violations felt equally by *all Tennesseans* and therefore "does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992). Moreover, as to Maxwell's First Amendment right-to-worship claim, the allegations in Maxwell's complaint are insufficient to state an "injury in fact" under Article III. *Cf. Cassell v. Snyders*, 2020 WL 2112374, at \*6 (N.D. Ill. May 3, 2020) (plaintiffs had standing because the allegations in the complaint established that the plaintiffs faced a "credible

5

threat of prosecution" for attending church services in violation of Illinois Governor Pritzker's Executive Order 2020-10); *see also Calvary Chapel of Bangor v. Mills*, 2020 WL 2310913, at *6 n.13 (D. Me. May 9, 2020) ("Over the last several weeks, the majority of courts that have considered similar executive orders in other states have concluded that a state does not violate the Free Exercise Clause when it limits in-person religious services to ten people, at least as long as the state permits drive-in services.") (collecting cases). It is therefore recommended that all claims against the Defendants be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

C.     **The Eleventh Amendment and Sovereign Immunity**

The Defendants argue that all claims against them must be dismissed for lack of subject matter jurisdiction because each defendant is immune from suit under the Eleventh Amendment and the doctrine of sovereign immunity. (Defs.' Mem., D.E. 12-1, at PageID 66.) Maxwell's *pro se* complaint is best characterized as asserting a claim under 42 U.S.C. § 1983; that, acting under color of law, the Defendants caused a deprivation of federally protected rights. (*See* Compl. ¶ 3, D.E. 1.) Maxwell's complaint seeks monetary damages against the Defendants in excess of $20 million. (*Id.* ¶ 4.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that he suffered (1) a deprivation of rights secured by the Constitution or federal statutes that is (2) committed by a person acting under color of state law. *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). However, if the Eleventh Amendment bars suit, the court lacks subject matter jurisdiction and "shall dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Henderson v. Southwest Tenn. Cmty. Coll.*, 282 F. Supp. 2d 804 (W.D. Tenn. 2008) (dismissing the claim pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment).

6

### 1.  *Official capacity*

Official and individual capacity liability under § 1983 should be carefully distinguished. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Individual capacity suits, in contrast, seek to impose personal liability upon a government official for actions taken under color of state law, where the plaintiff recovers only against the government official's personal assets. *Id.* Claims against government officials in their official capacities are tantamount to a suit against the governmental entity. *Graham*, 473 U.S. at 166 (citation omitted).

All of the Defendants are "state officials" under Tennessee law. *See* Tenn. Code Ann. § 8-42-101(3)(A). A suit against the Defendants in their official capacity is therefore a suit against the State of Tennessee. *Williams v. Nicely*, 230 S.W.3d 385, 389 (Tenn. Ct. App. 2007). The Eleventh Amendment bars suits in which the state itself is named as a defendant because "a state is not a person within the meaning of 42 U.S.C. § 1983." *Will v. Michigan*, 491 U.S. 58, 71 (1989).

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (internal citations omitted). "Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court." *Hixon v. Tennessee*, 2015 WL 1486362, at *2 (W.D. Tenn. Mar. 31, 2015). Congress did not abrogate the Eleventh Amendment when it enacted § 1983, *Edelman*, 415 U.S. at 675-77, and Tennessee has not waived its sovereign immunity, Tenn. Code Ann. § 20-13-102(a). Accordingly, Maxwell's claims for monetary damages against the

Defendants in their official capacity are barred by the Eleventh Amendment. As such, the court lacks subject matter jurisdiction over those claims. *See* Fed. R. Civ. P. 12(h)(3). It is therefore recommended that all claims against the Defendants in their official capacity be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### 2. *Individual capacity*

"Where a plaintiff seeks to hold someone individually liable for constitutional injury directly caused by someone else, the court must apply standards regarding supervisory liability." *Clark v. Kentucky*, 229 F. Supp. 2d 718, 723 (E.D. Ky. 2002). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

Maxwell's complaint does not allege that any of the Defendants "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* It is therefore recommended that all claims against the Defendants in their individual capacity be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### D. Governor Lee's Executive Orders

The Defendants alternatively argue that Maxwell's complaint fails to state a claim because the executive orders are a proper use of Governor Lee's emergency powers and Tennessee's

8

general police power to promote public safety during a public health crisis. (Defs.' Mem., D.E. 12-1, at PageID 64.)

Tennessee law authorizes Governor Lee to restrict the "movement of persons within [an emergency area]," Tenn. Code Ann. § 58-2-107(e)(7), and to "[t]ake measures concerning the conduct of civilians, the movement and cessation of movement of pedestrian and vehicular traffic prior to, during, and subsequent to . . . actual or threatened emergencies, the calling of public meetings and gatherings, and the evacuation and reception of civilian population," *id.* § (e)(11). "Emergency" includes "disease outbreaks and epidemics." Tenn. Code Ann. § 58-2-101(7).

The Supreme Court has upheld the states' general police power to promote public safety during a public health crisis. *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25-31 (1905) (upholding a Massachusetts law mandating smallpox vaccinations, explaining "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. . . ."); *see also In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) ("To be sure, individual rights secured by the Constitution do not disappear during a public health crisis, but the Court plainly stated that rights could be reasonably restricted during those times.") (citing *Jacobson*, 197 U.S. at 29). Under *Jacobson*, "a court may review a constitutional challenge to a government's response to a public health crisis only if the state's response lacks a 'real or substantial relation' to the public health crisis or it is, 'beyond all question, a plain, palpable invasion' of [a constitutional right]." *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) (quoting *Jacobson*, 197 U.S. at 31).

This court finds that Executive Order Nos. 22 and 23 are a proper use of Governor Lee's emergency powers and Tennessee's general police power to promote public safety during a public

9

health crisis. The executive orders are substantially related to protecting Tennessee residents during an international public health crisis[2] and are not "beyond all question, a plain, palpable invasion of" Maxwell's—or any Tennessee resident's—constitutional rights. *Jacobson*, 197 U.S. at 31; Tenn. Code Ann. § 58-2-107(e)(7). It is therefore recommended that Maxwell's complaint be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the Defendants' motion to dismiss be **GRANTED** under Rule 12(b)(1) for lack subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Respectfully submitted this 29th day of June, 2020.

s/ Jon A. York
**UNITED STATES MAGISTRATE JUDGE**

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.

---

[2] *See, e.g.*, *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 918 (6th Cir. 2020) ("Suffice it to say, COVID-19 is the virus at the root of an ongoing global pandemic, which, in just a few short months, has killed tens of thousands of people worldwide and infected hundreds of thousands more. . . . The virus has also upended American economic and social life, causing schools and businesses to shutter, and even the nominally unaffected to wear masks and stand six feet apart in public.").